1  **WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Frances Anne Mehok Antti, | No. CV-18-01555-PHX-JZB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Frances Anne Mehok Antti seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence and is based on legal error, the Commissioner's decision will be vacated and the matter remanded for calculation of benefits.

**I.  Background.**

On December 23, 2011, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning November 23, 2011. On October 30, 2013, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified. On February 4, 2014, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals

Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. Plaintiff filed an action for judicial review, which remanded for further administrative proceedings. *Mehok Antti v. Colvin*, No. CV 15-01607-PHX-DMF (D. Ariz. Dec. 22, 2016). (AR 791-812.)

Upon remand from the Social Security Administration Appeals Council, on October 30, 2017, ALJ Schum issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act.

## II. Legal Standard.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the

1    burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's RFC, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014, and that she has not engaged in substantial gainful activity since November 23, 2011. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative changes of the cervical and lumbar spine, fibromyalgia, and depression. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Plaintiff has the RFC to perform:

> light work (lifting and carrying 20 pounds occasionally and ten pounds frequently, sitting for six hours out of eight, and standing/walking for six hours out of eight) as defined in 20 CFR 404.1567(b) except the claimant could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. Claimant could occasionally stoop, kneel, crouch, but could never crawl. Claimant could frequently reach overhead. Claimant should avoid

|   |   |
|---|---|
| 1 | concentrated exposure to extreme cold, unprotected heights and moving mechanical machinery. Claimant could understand, remember, and carry out simple instructions and tasks. |
| 2 | |
| 3 | (AR 726.) |

The ALJ further found that Plaintiff is unable to perform any of her past relevant work. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

**IV.    Analysis.**

Plaintiff argues the ALJ's decision is defective for two reasons: (1) the ALJ erred in rejecting Dr. Lawson's assessments, and (2) the ALJ erred in rejecting Plaintiff's symptom testimony. (Doc. 19.) The Court will address each argument below.

**A.    Weighing of Medical Source Evidence.**

Plaintiff argues that the ALJ improperly weighed the medical opinions of the examining physician, Dr. David Lawson.

**1.    Legal Standard.**

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*,

53 F.3d at 1043).

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quotations omitted). But "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

### 2. David Lawson, M.D.

Dr. David G. Lawson, M.D., has served as Plaintiff's primary care physician since 2010, and continued to treat Plaintiff throughout the relevant period. (AR 505.) In June 2012, Dr. Lawson noted that Plaintiff had chronic pain and prescribed Fentanyl and Oxycodone for pain control. (AR 542.) Dr. Lawson continued to prescribe pain medication in July 2012 (AR 540-41), October 2012 (AR 539), November 2012 (AR 659), and March 2013 (AR 655-58). Dr. Lawson treated Plaintiff for all of her conditions, including anxiety, gastrointestinal issues, hypothyroidism, insomnia, fatigue, fibromyalgia, and chronic back pain. (AR 1026-27 (August 2013), 1020-21 (March 2014), 1016-17 (July 2014), 1014-15 (January 2015), 1004-05 (July 2015 – increased Oxycodone), 998-99 (January 2016), 996-97 (March 2016), 992-93 (November 2016), 986-87 (April 2017).)

After performing an examination of Plaintiff on March 20, 2013, Dr. Lawson found no physical findings supporting Plaintiff's ailments. (AR 655-56.) Dr. Lawson noted that Plaintiff "[t]olerated the discontinuation of both Maxide and Toprol XD well" and "feels markedly improved." (AR 655.) Dr. Lawson also determined that Plaintiff's "Dizziness [is] essentially resolved." (AR 655.)

In September 2013, Dr. Lawson completed two forms providing opinion on Plaintiff's conditions: (1) a "Fibromyalgia Residual Functional Capacity (RFC)

Questionnaire" (AR 623-25); and (2) a "Medical Assessment of Ability to Do Work Related Physical Activities" (AR 626-28). In the Fibromyalgia Questionnaire, Dr. Lawson listed findings of multiple fibromyalgia tender points, nonrestorative sleep, severe fatigue, depression, abdominal pain, cognitive impairment, morning stiffness, anxiety, low back pain, and panic attacks. (AR 623.) Dr. Lawson opined that Plaintiff suffered from moderately severe pain, which meant that "pain affects, but does not preclude ability to function." (AR 623-24.) Dr. Lawson further opined that the Plaintiff would not be able to sustain work on a regular and continuing basis. (AR 625.)

In his Medical Assessment of Ability to Do Work Related Physical Activities, Dr. Lawson found that Plaintiff suffered from osteoarthritis, fibromyalgia, plantar fasciitis, and lumbar degenerative disc disease. (AR 626.) Dr. Lawson concluded that Plaintiff could, in an 8-hour work day, sit for four hours, stand/walk for four hours, lift and carry less than 10 pounds, and that Plaintiff could never climb, balance, stoop, kneel, or crawl, (AR 626-27.) Dr. Lawson opined that Plaintiff must alternate between sitting and standing due to her symptoms. (AR 626.) Dr. Lawson further opined that Plaintiff could only occasionally handle and reach with the right hand, and could only occasionally handle, perform fine manipulation, and reach with the left hand. (AR 626.) Dr. Lawson noted that Plaintiff "has osteoarthritis back, hands, hips, knees" and "[a]lso has fibromyalgia and plantar fasciitis." (AR 628.) The ALJ afforded "no weight" to both of these assessments.

In June 2017, Dr. Lawson provided an updated assessment. (AR 1334.) Therein, Dr. Lawson found that Plaintiff could occasionally lift or carry 10 pounds, could frequently lift or carry less than 10 pounds, could stand or walk at least two hours in an eight-hour workday, and could sit for four hours in an eight-hour workday. (AR 1334.) Dr. Lawson noted that Plaintiff must change positions every 60 minutes and can only occasionally handle and feel with her right hand. (AR 1335.) Additionally, Dr. Lawson stated that Plaintiff "has gait instability as well as balance difficulty due to her multiple back issues" and opined that Plaintiff has moderately severe pain that would frequently interfere with attention and concentration and frequently cause deficiencies of concentration, persistence

or pace resulting in failure to complete tasks in a timely manner. (AR 1338.) The ALJ assigned "no weight" to Dr. Lawson's June 2017 assessment.

Dr. Lawson's opinion is contradicted by the opinions of Dr. Christopher Maloney, M.D. (AR 88-100). On April 30, 2012, Dr. Maloney reviewed Plaintiff's medical conditions and rendered a Residual Functional Capacity Assessment. (AR 96.) Dr. Maloney found that Plaintiff had the following limitations: Plaintiff can occasionally lift and/or carry 50 pounds, and frequently, 25 pounds (AR 96); Plaintiff can sit, stand and/or walk for up to 6 hours per day (AR 96); Plaintiff can frequently climb ladders, ropes, and scaffolds as well as crouch with no other limitations (AR 96). The ALJ also assigned "no weight" to this state agency physician opinion.

Dr. Maloney opined Plaintiff had greater abilities than those identified in Dr. Lawson's opinion. Accordingly, the ALJ could discount Dr. Lawson's opinion for specific and legitimate reasons supported by substantial evidence. *Lester*, 81 F.3d at 830-31. The ALJ provides five reasons for assigning no weight to Dr. Lawson's opinion: (1) Dr. Lawson "never documented any of his examination results or neurological, musculoskeletal, or psychiatric findings" in his treatment notes; (2) "Dr. Lawsons's opinion is also not supported by [Plaintiff's] own reports" and Plaintiff had "only two visits in 2013, which suggest [Plaintiff's] pain symptoms were controlled with medication"; (3) Dr. Lawson "does not provide a description of [Plaintiff's] pain level, yet he finds she experiences moderate pain symptoms"; (4) Dr. Lawson's opinion is not consistent with Plaintiff's daily activities; and (5) Dr. Lawson's opinion is outside of his area of specialty. (AR 730-31.)

### a. Unsupported by Treatment Notes.

The ALJ's first reason for discounting Dr. Lawson's opinion is that it is unsupported by Dr. Lawson's treatment notes because those notes contain no substantial reports of examinations or findings. (AR 730.) Specifically, the ALJ "assigns no weight to Dr. Lawson's assessments dated September 27, 2013. . . . [because] the record shows that Dr. Lawson's cursory exams were mostly within normal limits." (AR 730.) Additionally,

Plaintiff had a "full range of motion in the neck, soft nontender, nondistended abdomen[,] . . . no clubbing, cyanosis or edema in the extremities, nonfocal, motor strength, normal upper and lower extremities and intact sensory exam." (AR 730 (citing AR 1016, 1018, 1020, 1022).) Furthermore, the ALJ states that there were "no physical examination findings that documented limitations, nor did Dr. Lawson note that [Plaintiff] complained of hand or finger limitations." (AR 730.)

"An ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole,[] or by objective medical findings[.]" *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1195 (9th Cir. 2004). "A conflict between treatment notes and a treating provider's opinions may constitute an adequate reason to discredit the opinions of a treating physician or another treating provider." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1111-12; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (holding that a conflict with treatment notes is a specific and legitimate reason to reject treating physician's opinion)).

But "a physician, unlike an ALJ, is not required to provide specific citation for each opinion, particularly those supported by the record as a whole." *Sahlberg v. Commr. Of Soc. Sec.*, 2017 WL 1130365, at *3 (D. Ariz. Mar. 27, 2017) (citing *Orn*, 495 F.3d at 634 ("The primary function of medical records is to promote communication and recordkeeping for health care personnel—not to provide evidence for disability determinations. We therefore do not require that a medical condition be mentioned in every report to conclude that a physician's opinion is supported by the record.")). In the case of fibromyalgia, the condition is diagnosed "entirely on the basis of patients' report of pain and other symptoms. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). ("There are no laboratory tests to confirm the diagnosis.").

Here, the ALJ ignores findings in Dr. Lawson's notes that support the assessed limitations. (*See, e.g.*, AR 655 (finding Plaintiff suffers from "chronic pain disease"); 657 (same).) What is more, to the extent the ALJ notes that Dr. Lawson's notes contain "normal" findings, the ALJ fails to explain how those findings conflict with Dr. Lawson's

opined limitations. *See Embrey*, 849 F.2d at 421-22 ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). Because the ALJ fails to account for supportive findings in Dr. Lawson's treatment notes, and the ALJ fails to explain how normal findings in Dr. Lawson's treatment notes conflict with the assessed limitations, the Court finds that the ALJ's first reason for discounting Dr. Lawson's medical opinion is not specific and legitimate.

### b. Plaintiff's Own Reports and Daily Activities.

The ALJ's second reason for discounting Dr. Lawson's opinion is that it is inconsistent with Plaintiff's own reports of improvement with treatment and with her daily activities. (AR 730-31). Specifically, the ALJ notes that Plaintiff reports that "she could manage activities of personal care, albeit with difficulty. . . could shop by phone or computer, could manage personal finances, could grocery shop" and "[t]he claimant reported that even on her 'low' days she could do her craft work." (AR 730 (citing Exs. B4E; B48F/29).)

While an ALJ may consider the inconsistency between a physician's opinion and a claimant's daily activities as a specific and legitimate reason for discounting that physician's opinion, *see Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999), the analysis presented by the ALJ in this instance is insufficient to do so. Nothing in Plaintiff's description of her daily activities is inherently inconsistent with Dr. Lawson's medical opinion. *See Smolen*, 80 F.3d at 1287 n.7 ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication.").

Without further explanation from the ALJ as to how Plaintiff's daily activities are inconsistent with Dr. Lawson's medical opinion, the Court finds the ALJ's second reason for discounting that opinion is insufficient.

### c. No Evidence of Pain by Dr. Lawson.

The ALJ's third reason for discounting Dr. Lawson's opinion is that Dr. Lawson never assessed Plaintiff's pain until marking "moderate" on the Fibromyalgia Questionnaire. (AR 623-24, 731.) Specifically, the ALJ observes that there are "no notes" in any of Plaintiff's visits to Dr. Lawson that indicate the levels of pain Plaintiff felt. (AR 730)

The ALJ is mistaken and misrepresents the record. Dr. Lawson's notes clearly assess Plaintiff with "chronic pain syndrome." (AR 655, 657.) Furthermore, the record is replete with notes that show Dr. Lawson prescribed pain medication for Plaintiff's symptoms on a regular basis (*see, e.g.*, AR 540-41; 539; 659; 655-58; 1026-27; 1020-21; 1016-17; 1014-15; 998-99; 996-97; 992-93; 986-87), and even that the dosage of pain medication was required to be increased on one occasion because the current medication level was insufficient (AR 1004-05 (July 2015)). The record clearly demonstrates that Dr. Lawson had evaluated and treated Plaintiff's chronic before completing the Fibromyalgia Questionnaire, and thus did not improperly assess the level of Plaintiff's pain. (*Id.*) Accordingly, the Court finds that the ALJ's third reason for discounting Dr. Lawson's opinion is not legitimate and is rejected.

### d. Daily Activities.

The ALJ's fourth reason for discounting Dr. Lawson's medical opinion is that it is inconsistent with Plaintiff's daily activities. (AR 731.) Specifically, the ALJ determines that Plaintiff's crafting and painting is not consistent with the Plaintiff's pain symptoms. (AR 731.)

An ALJ may reject a claimant's symptom testimony if it is inconsistent with the claimant's daily activities. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). But "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). Thus, an ALJ may use a claimant's daily activities to discredit symptom testimony only if

the claimant "spend[s] a *substantial part* of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (emphasis added); *Reddick*, 157 F.3d at 722 ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").

The Court finds that the ALJ's fourth reason for discounting Dr. Lawson's medical opinion is not specific and legitimate. To be sure, Plaintiff admits that even "on her low days," she can "do her craft work." (AR 1410.) And according to a Third-Party Function Report completed by Plaintiff's significant other in March 2012, Plaintiff's hobbies include "crocheting, arts and crafts, [and] watching TV." (AR 227.) But nothing in Dr. Lawson's medical opinion contradicts Plaintiff's reported ability to complete crafts. (*See* AR 730, 1016, 1018, 1020, 1022.) And no other daily activities reported by Plaintiff conflict with Dr. Lawson's medical assessments. (*See* AR 728 (stating Plaintiff can manage personal care, occasionally shop online, and grocery shop).) Accordingly, the Court finds that the ALJ's fourth reason for discounting Dr. Lawson's opinion is not specific and legitimate and will be rejected.

### e. Area of Specialty.

The ALJ's final reason for discounting Dr. Lawson's medical opinion is that Dr. Lawson is a general practitioner and not a specialist in the fields he diagnoses.

The medical opinion of a specialist is given more weight about medical issues in that specialist's area of specialty than the medical opinion of a source that is not a specialist. 20 C.F.R. § 404.1527(c)(5). "[T]he regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of non-specialists." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citation omitted). Here, the ALJ fails to identify which portions of Dr. Lawson's opinion should be discounted because of his specialty area. Because the ALJ fails to specify what portion of the opinion is discounted, the Court rejects the ALJ's fifth reason for discounting Dr. Lawson's opinion.

### f. Summary.

Because the ALJ fails to provide specific and legitimate reasons for discounting Dr. Lawson's medical opinion, the Court finds the ALJ committed error in doing so.

## B. The ALJ Erred in Evaluating Plaintiff's Credibility.

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment. In other words, the ALJ found Plaintiff's statements not credible to the extent she claims she is unable to perform in a competitive work environment.

### 1. Plaintiff's Symptom Testimony.

At the hearings, Plaintiff testified to the following facts. (AR 904-921, 1472-88.) Plaintiff last worked as a customer service manager, and before that a video clerk, prior to her disability onset in November of 2011. (AR 908.) Plaintiff's employer fired Plaintiff July 9, 2009, but she was unsure of the reasons for her firing. (AR 908.) Plaintiff did not testify whether she sought employment after her termination. Plaintiff does not believe she is able to work because she has fibromyalgia and "sitting is not pleasant," her hips are degenerative, she sits in bed "75 percent of the time," and if she does not take her medication in the morning, she does not walk. (AR 909.) Plaintiff takes prescribed medication for her pain, which helps her get out of bed in the morning. (AR 910.) Plaintiff cannot lift her head off of the pillow without pulling "with her hair." (AR 1478.)

Plaintiff asserts that she must alternate between sitting and standing throughout the day because of her pain. (AR 916.) Plaintiff spends the majority of her day "sitting in bed," usually in a reclined position. (AR 916-17.) Plaintiff must nap three to four times a week because of daytime fatigue or sleepiness. (AR 917.) Plaintiff is unable to perform her previous job because she "can't remember what [she] said two seconds ago." (AR 920.) Plaintiff also suffers from anxiety and depression, which causes her to shake. (AR 920.)

Plaintiff lives with her husband and her husband's son, daughter, and ex-wife. (AR 906.) Around the house, Plaintiff performs no chores. (AR 913-14.) Plaintiff eats every two hours or so due to her diabetes, and her meals consist of "crackers and cheese, fruits, fresh fruits," toast, and juice. (AR 911-12.) Plaintiff watches TV throughout the day. (AR 912.) Plaintiff admits she drives, but she cannot drive if she has taken her pain medication. (AR 920.)

### 2. ALJ's Reasons for Discounting Plaintiff Testimony.

The ALJ provides three reasons for discounting Plaintiff's symptom testimony as not fully credible: (1) "[Plaintiff] described daily activities are not limited to the extent one would expect, given her complaint of severe pain and subjective limitation"; (2) "[t]reatment modalities have been conservative and consisted of pain medication"; and (3) Plaintiff's objective medical tests support the finding of a "light exertion level and the climbing, stooping, kneeling, crouching, crawling, and reaching limitations found [t]herein." (AR 728-29.) The Court will address each reason provided.

#### a. Daily Activities.

The ALJ's first reason for discounting Plaintiff's symptom testimony is that Plaintiff's described "daily activities are not limited to the extent one would expect, given her complaint of severe pain and subjective limitation." (AR 728.)

An ALJ may reject a claimant's symptom testimony if it is inconsistent with the claimant's daily activities. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). But "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony" about subjective symptoms, like pain or fatigue, "because impairments that

- 13 -

would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Thus, an ALJ may use a claimant's daily activities to discredit symptom testimony only if the claimant "spend[s] a *substantial part* of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (emphasis added); *Reddick*, 157 F.3d at 722 ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").

Here, the ALJ fails to show how Plaintiff's daily activities are inconsistent with her subjective testimony. Specifically, the ALJ states that Plaintiff's testimony that she could "manage activities of personal care, albeit with some difficulty," "could shop by phone or computer, could manage personal finances, could grocery shop," and "even on her 'low' days[,] she could do her craft work." (AR 728.) However, the ALJ simply states these activities are "not limited to the extent one would expect, given [Plaintiff's] complaints of severe pain and subjective limitation." (AR 728.) The ALJ provides no explanation as to how Plaintiff's reported daily activities are inconsistent with her symptom testimony, or in what way Plaintiff's daily activities demonstrate physical functions that are transferrable to a work setting. *See Orn*, 495 F.3d at 639; *Reddick*, 157 F.3d at 722. Accordingly, the Court finds the ALJ's first reason for discounting Plaintiff's subjective testimony is not clear and convincing and must be rejected.

### b. Conservative Treatment.

The ALJ's second reason for finding Plaintiff's symptom testimony not fully credible is that Plaintiff received only conservative treatment. (AR 728.) An ALJ may discredit a Plaintiff's subjective pain testimony if the record reflects that the Plaintiff responds favorably to minimal, conservative treatment. *Tommasetti v. Astrue*, 533 F.3d 135, 1040 (9th Cir. 2008) (finding plaintiff not credible because he responded favorably to "the use of anti-inflammatory medication, transcutaneous electrical nerve stimulation unit, and a lumbosacral corset").

Here, the ALJ concludes that Plaintiff's treatment was "conservative" by noting that "[Plainiff] has not generally received the level of medical treatment one would expect for a disabled individual." (AR 728.) However, "no medical opinion in this record characterizes the treatment of Plaintiff's [impairments] as 'conservative,' nor does substantial evidence support that conclusion." *Schultz v. Covin*, 32 F. Supp. 3d 1047 (N.D. Cal. 2014). In reality, the record indicates Plaintiff was taking Oxycodone and fentanyl patches to relieve her pain. (AR 918.) The ALJ fails to explain how the use of powerful pain medication constitutes routine or conservative treatment. What is more, the ALJ did not explain why he considered this treatment to be conservative or what more aggressive treatment would be expected for someone with Plaintiff's impairments. Accordingly, the Court finds this is not a clear and convincing reason because the ALJ provided no explanation to allow the Court to meaningfully evaluate it. *See Brown-Hunter*, 806 F.3d at 495 ("Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").

### c. Objective Medical Testing.

The ALJ's final reason for discounting Plaintiff's subjective symptom testimony is that it is not consistent with the objective medical findings in the record. (AR 728.) A plaintiff need not produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Garrison*, 859 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). However, insufficient objective medical evidence may discredit a plaintiff when combined with other relevant factors. *Joly v. Astrue*, 357 F. App'x. 937, 939 (9th Cir. 2009) (finding that the ALJ gave specific and legitimate reasons for discrediting a plaintiff where "there was insufficient objective medical evidence to support her allegations of pain, *and* her daily living activities were consistent with a capacity for light to medium exertion") (emphasis added).

Here, the ALJ fails to identify clear and convincing reasons for discrediting Plaintiff's subjective testimony. The ALJ notes that Plaintiff suffers from limited range of

motion and "pain and tenderness to palpitations in major muscle groups throughout the entire body." (AR 728.) The only discrepancy the ALJ identifies is Plaintiff's testimony regarding the manner in which she lifts her head from her pillow (AR 279) and the finding of no objective muscle weakness (AR 728). Absent any other evidence of inconsistencies with the medical record, the Court finds this isolated "discrepancy" to be insufficient to discount the entirety of Plaintiff's symptom testimony. To be sure, the ALJ's citation to isolated comments by Plaintiff without considering the record as a whole amounts to "improper cherry-pick[ing]." *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *see also Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017).

Accordingly, the Court finds that the ALJ's third reason for discounting Plaintiff's symptom testimony is not clear and convincing and must be rejected.

### F. Remand.

Where an ALJ fails to provide adequate reasons for rejecting the opinion of a physician, the Court must credit that opinion as true. *Lester*, 81 F.3d at 834. An action should be remanded for an immediate award of benefits when the following three factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1202 (9th Cir. 2008), *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007), *Orn*, 495 F.3d at 640, *Benecke*, 379 F.3d at 595, and *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). There is "flexibility" which allows "courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1020.

In this instance, the first, second, and third factors are clearly satisfied. The record is substantial, the Court has found that the ALJ failed to provide legally sufficient reasons

| | |
|---|---|
| 1 | for rejecting Plaintiff's symptom testimony, and a vocational expert testified that Plaintiff |
| 2 | would be, in fact, disabled if Dr. Lawson's opinion were credited as true. |

Furthermore, the Court has no serious doubt that the Plaintiff is, in fact, disabled. Plaintiff does have multiple objective indicators of some impairments, such as degenerative findings in her sacroiliac joints, right shoulder atrophy, and degenerative changes of the lower back. (AR 664-65, 1038.) The ALJ fails to provide a legitimate reason for discounting the treating physician's opinion or Plaintiff's testimony, and the Court cannot find one within the record. Accordingly, the Court will remand this case for the immediate calculation of benefits.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for the immediate calculation of benefits.

Dated this 24th day of September, 2019.

Honorable John Z. Boyle
United States Magistrate Judge